UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

GOVERNMENT EMPLOYEES INSURANCE CO., et al.,               Docket No.:
                                                          1:19-cv-05570-ENV-VMS
                              Plaintiffs,

              -against-

AXIAL CHIROPRACTIC, P.C., et al.,

                              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X


## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION PURSUANT TO FED. R. CIV. P. 15, 16, AND 21 FOR LEAVE TO AMEND THE COMPLAINT AND ADD ADDITIONAL DEFENDANTS


                              Respectfully submitted,

                              RIVKIN RADLER LLP
                              926 RXR Plaza
                              Uniondale, New York 11556
                              (516) 357-3000

                              *Counsel for Plaintiffs, Government Employees Insurance
                              Co., GEICO Indemnity Co., GEICO General Insurance
                              Company and GEICO Casualty Co.*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT ................................................................................ 1

  I.   SUMMARY ................................................................................................. 1

  II.  STATEMENT OF RELEVANT FACTS ...................................................... 2

     A.  Relevant Procedural History ............................................................. 2

     B.  GEICO's Original Complaint ............................................................. 3

     C.  The Basis for the Proposed Amendments .......................................... 4

ARGUMENT .......................................................................................................... 7

  I.   THE STANDARDS ON THIS MOTION ...................................................... 7

  II.  THERE IS GOOD CAUSE TO RE-OPEN THE DEADLINE
      TO AMEND PLEADINGS ......................................................................... 9

  III. THE COURT SHOULD GRANT PLAINTIFFS LEAVE TO
      FILE THE PROPOSED AMENDED COMPLAINT ..................................... 12

  IV. THE ADDITION OF BAYSIDE AND YOO AS A NEW
      DEFENDANTS DOES NOT ALTER THE RULE 15 ANALYSIS ............... 17

CONCLUSION ....................................................................................................... 18

i

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

In re "Agent Orange" Product Liability Litigation,
　　220 F.R.D. 22 (E.D.N.Y. 2004) ...........................................................12

AIU Ins. Co. v. Olmecs Med. Supply, Inc.,
　　2005 U.S. Dist. LEXIS 29666 (E.D.N.Y. 2005) .....................................15

Allstate Ins. Co. v. Elzanaty,
　　916 F. Supp. 2d 273 (E.D.N.Y. 2013) ...................................................18

Allstate Ins. Co. v. Halima,
　　2009 U.S. Dist. LEXIS 22443 (E.D.N.Y. 2009) .....................................15

Allstate Ins. Co. v. Harvey Family Chiropractic,
　　677 F. App'x 716 (2d Cir. 2017) ...........................................................16

Allstate Ins. Co. v. Valley Physical Med. & Rehab.,
　　P.C., 2009 U.S. Dist. LEXIS 91291 (E.D.N.Y. 2009) ............................15

Associated Mortg. Bankers, Inc. v. Calcon Mut. Mortg. LLC,
　　159 F.Supp.3d 324 (E.D.N.Y. 2016) .....................................................17

Black Radio Network, Inc. v. NYNEX Corp.,
　　44 F. Supp. 2d 565 (S.D.N.Y. 1999) .......................................................9

Block v. First Blood Assocs.,
　　988 F.2d 344 (2d Cir. 1993) ..................................................................12

Camoia v. City of New York,
　　2013 WL 867199 (E.D.N.Y. 2013) ..........................................................8

Care Environmental Corp. v. M2 Technologies, Inc,
　　No. CV-05-1600, 2006 WL 2265036 (E.D.N.Y. Aug. 8, 2006) ...............8

Cmty. Ass'n Underwriters of Am., Inc. v. Main Line Fire Prot. Corp.,
　　2020 WL 5089444 (S.D.N.Y. 2020) ......................................................14

In re Crazy Eddie Sec. Litig.,
　　792 F. Supp. 197 (E.D.N.Y. 1992) ........................................................18

Dalton, Dalton, Little, Inc. v. Mirandi,
     412 F. Supp. 1001 (D.N.J 1976) ...................................................................3

Dilworth v. Goldberg,
     914 F. Supp. 2d 433 (S.D.N.Y. 2012)........................................................12

Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals,
     282 F.3d 83 (2d Cir. 2002)..................................................................8, 17

Fair Price Med. Supply Corp. v. ELRAC Inc.,
     12 Misc. 3d 119 (App. Term 2006) ......................................................5, 15

Fariello v. Campbell,
     860 F. Supp. 54 (E.D.N.Y. 1994) ............................................................9

Fornan v. Davis,
     371 U.S. 178 (1962).................................................................................9

Fustok v. Conticommodity Serv., Inc.,
     103 F.R.D. 601 (S.D.N.Y. 1984) ...........................................................13

Gem Global Yield Fund, Ltd. v. Surgilight, Inc.,
     2006 WL 2389345 (S.D.N.Y. 2006) .......................................................13

Gov't Employees Ins. Co. v. Mayzenberg,
     2018 WL 6031156 (E.D.N.Y. 2018).......................................................15

Griffin v. Sirva, Inc.,
     2018 WL 1175070 (E.D.N.Y. Mar. 6, 2018) ............................................7

Kassner v. 2nd Ave. Delicatessen Inc.,
     496 F.3d 229 (2d Cir. 2007)................................................................7, 8

Lickteig v. Cerberus Capital Mgmt., L.P.,
     2020 WL 7629876 (S.D.N.Y. 2020).......................................................11

Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb, Inc.,
     734 F. Supp. 1071 (S.D.N.Y. 1990)........................................................13

Magi XXI, Inc. v. Stato Della Cit%22a Del Vaticano,
     22 F. Supp. 3d 195 (E.D.N.Y. 2014) ......................................................16

Minoli v. Evon,
     No. CV-95-0544, 1996 WL 288473 (E.D.N.Y. May 24, 1996) ...............13

Pall Corp. v. Entegris, Inc.,
     2007 WL 9709768 (E.D.N.Y. 2007)........................................................14

Point 4 Data Corp. v. Tri–State Surgical Supply & Equipment, Ltd.,
    2012 WL 2458060 (E.D.N.Y. 2012)......................................................................8

Rachman Bag Co. v. Liberty Mut. Ins. Co.,
    46 F.3d 230 (2d Cir. 1995)..................................................................................9

Randolph Foundation v. Duncan,
    2002 WL 32862 (S.D.N.Y. 2002).......................................................................12

Ryan v. New York Tel. Co.,
    62 N.Y.2d 494, 467 N.E.2d 487 (1984).........................................................16, 17

Sanrio Co., Ltd. v. Epic Trading, Inc.,
    No. 2004-5428, 2005 WL 1705746 (E.D.N.Y. 2005) .......................................17

Sperberg v. Firestone Tire & Rubber Co.,
    61 F.R.D. 78 (N.D. Ohio 1973) ...........................................................................9

State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C.,
    246 F.R.D. 143 (E.D.N.Y. 2007) ..................................................................13, 18

State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C., et al.,
    2008 U.S. Dist. LEXIS 71156 (E.D.N.Y. 2008)................................................15

State Farm Mut. Auto. Ins. Co. v. Grafman,
    655 F. Supp. 2d 212 (E.D.N.Y. 2009) ...............................................................15

State Farm Mut. Auto. Ins. Co. v. James M. Liguori, M.D., P.C.,
    589 F. Supp. 2d 221 (E.D.N.Y. 2008) ...............................................................15

State Farm Mut. Auto. Ins. Co. v. Rabiner,
    2010 U.S. Dist. LEXIS 119961 (E.D.N.Y. 2010)..............................................15

State Teachers Ret. Bd. v. Fluor Corp.,
    654 F.2d 843 (2d Cir. 1981)...............................................................................13

Stone v. Courtyard Mgmt. Co.,
    2001 WL 395159 (S.D.N.Y. 2001)......................................................................8

Topps Co., Inc. v. Cadbury Stani S.A.I.C.,
    2002 WL 31014833 (S.D.N.Y. 2002)................................................................12

United States v. Cont'l Ill. Nat. Bank and Trust Co. of Chi.,
    889 F.2d 1248 (2d Cir. 1989).............................................................................14

Weaver v. Warrington,
    2018 WL 5253110 (E.D.N.Y. 2018) (Vitaliano, J.) ..........................................11

**Statutes and Other Authorities**

18 U.S.C. § 1961 ...................................................................................................6

18 U.S.C. § 1962 ...................................................................................................4

N.J.S.A. § 14:A17-1, et seq. .................................................................................3

Public Health Law § 238-d ...............................................................................5, 15

8 N.Y.C.R.R. § 29.1 .............................................................................................15

10 N.Y.C.R.R. § 34-1.5 ........................................................................................16

11 N.Y.C.R.R. §65-3.11(a) ....................................................................................4

N.J.A.C. 13:44E-2.15 ...........................................................................................3

## PRELIMINARY STATEMENT

Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company and GEICO Casualty Co. (collectively, "Plaintiffs" or "GEICO") respectfully submit this memorandum of law in support of their Motion, pursuant to Fed. R. Civ. P. 15, 16, and 21 to re-open the deadline for amendments, for leave to amend the Complaint in this action, and to add additional Defendants. A copy of the proposed Amended Complaint is attached as Exhibit "1" to the Declaration of Steven T. Henesy (the "Henesy Decl.").[1]

## I.    SUMMARY

This Motion comes before the Court following the depositions of Defendants Axial Chiropractic, P.C. ("Axial"), Action Chiropractic, P.C. ("Action"), Bruce Bromberg, D.C. ("Bromberg") Lefcort MUA Chiropractic, P.C. ("Lefcort MUA"), Lawrence Lefcort, D.C. ("Lefcort"), Glenn Rosenberg, D.C., P.C. d/b/a South Shore Spinal Care ("South Shore"), Glenn Rosenberg, D.C. ("Rosenberg"), and Robert Luca, D.C. ("Luca") (collectively, the "Defendants"), which revealed facts and circumstances about which Plaintiffs were not previously aware. These newly-discovered facts and circumstances serve as the basis for the new allegations in the proposed Amended Complaint. Plaintiffs sought the consent of the Defendants to the relief sought through this motion. Defendants Axial, Action, Bromberg, South Shore, Rosenberg, and Luca have indicated they have no objection to the filing of the proposed Amended Complaint. Defendants Lefcort and Lefcort MUA do not consent to the filing of the proposed Amended Complaint.[2]

For the reasons outlined herein, Plaintiffs' motion should be granted in its entirety.

---

[1] In order to reduce any potential delay in connection with this motion, and to eliminate any potential prejudice to any of the parties to this action, Plaintiffs have respectfully filed this motion pursuant to Section III.E of the Court's individual rules.

[2] Defendants David Coty, D.C. and Archer Irby, D.C. never answered or otherwise responded to the original Complaint and never appeared by counsel in this action.

1

## II.     STATEMENT OF RELEVANT FACTS

### A.     Relevant Procedural History

GEICO commenced this action on October 2, 2019. See Docket No. 1. On January 7, 2020, the parties appeared for an initial conference before Magistrate Judge Steven M. Gold, at which time the Court adopted the parties' proposed scheduling order. See Docket No. 42. While the Court never formally entered a case management order with a deadline to amend pleadings in this action, the Court's January 7, 2020 Order indicated that it had adopted the parties' proposed deadlines. The parties had originally proposed, on consent, June 8, 2020 as the deadline for amendment of pleadings.

Plaintiffs' attempts at obtaining discovery in this case were hindered by delays caused by or at the request of the Defendants. For instance, Defendants Lefcort and Lefcort MUA initially failed to produce responsive documents to Plaintiffs. Indeed, on June 17, 2020 – more than one week after the original deadline to amend pleadings – Magistrate Judge Gold ordered Lefcort and Lefcort MUA to "respond to long outstanding document demands by JULY 9, 2020 on pain of sanction." See Docket No. 61. In that same order, Magistrate Judge Gold ordered the parties to submit a proposed deposition schedule to the Court, which the parties filed on July 23, 2020. See Docket No. 62. The original deposition schedule called for all depositions in this matter to be completed by October 7, 2020. See id. That schedule was pushed back on several occasions, including pursuant to a request filed by Defendants Rosenberg and South Shore on September 9, 2020. See Docket No. 63.

In November 2020, Defendants Lefcort and Lefcort MUA made a motion pursuant to Fed. R. Civ. P. 12(c), which remains pending before the Court. See Docket No. 70.

The depositions of the Defendants were ultimately conducted in November 2020, other than the deposition of Defendant Luca, which was not completed until January 14, 2021. On December 30, 2021, the parties jointly requested that fact discovery be extended to February 26, 2021 "in order

to allow for post-deposition discovery or, if necessary, a further rescheduling of the remaining party depositions." <u>See</u> Docket No. 71. That request was granted. <u>See</u> Docket Entry Dated December 31, 2020.

The deposition of GEICO's corporate representative began in October 2020, but has not yet been completed, and no new date for the continued deposition has been set. Expert discovery has not yet commenced, and there is no trial scheduled.

**B.**     <u>**GEICO's Original Complaint**</u>

Because it is impossible to fully describe every aspect of the Defendants' multifaceted fraud in a relatively short memorandum of law, GEICO respectfully refers the Court to the original Complaint in this action for the full contours of the Defendants' fraudulent scheme. Briefly, however, and as alleged in the Complaint:

(i)     The Defendants misrepresented the nature, extent, and results of their patient examinations, the results of their manipulation under anesthesia ("MUA") services, and the medical necessity of their MUA services. (<u>see</u> Docket No. 1, ¶¶ 132-221, 222-277, 278-290);

(ii)     Axial, Action, Lefcort MUA, and South Shore Spinal unlawfully operated in New Jersey as foreign professional corporations in violation of New Jersey law, which rendered them ineligible to receive no-fault insurance reimbursement in the first instance.[3]

(iii)     In a significant amount of their billing, South Shore Spinal and its associated Defendants fraudulently represented that the underlying services were provided by employees of South Shore Spinal, and therefore were reimbursable, when in fact the services were provided – to the extent that they were provided at all – by an independent contractor – Archer Irby – and therefore were not reimbursable. <u>See</u> Docket No. 1, ¶¶ 112-121.

<u>See</u> Docket No. 1, <u>passim.</u>

---

[3] <u>See</u>, <u>e.g.</u>, N.J.S.A. § 14:A17-1, <u>et</u> <u>seq</u>. <u>See</u> N.J.A.C. 13:44E-2.15; <u>Dalton, Dalton, Little, Inc. v. Mirandi</u>, 412 F. Supp. 1001 (D.N.J 1976).

Based on these allegations, GEICO asserts claims against the Defendants for, variously, civil RICO violations pursuant to 18 U.S.C. § 1962(c) and (d), common law fraud, unjust enrichment, and violation of the New Jersey Insurance Fraud Prevention Act ("IFPA"). In addition, GEICO seeks a declaratory judgment, to the effect that it need not pay any of the Defendants' outstanding no-fault insurance billing because of the fraudulent and unlawful activity alleged in the Complaint.

### C.   The Basis for the Proposed Amendments

The proposed Amended Complaint adds two new Defendants: Kyung Hee Yoo, P.T., L.Ac. ("Yoo") and the chiropractic, physical therapy, and acupuncture practice she co-owned (with originally-named Defendant Lefcort), namely Bayside Physical Therapy, Chiropractic, & Acupuncture, P.L.L.C. ("Bayside"). As discussed herein, the basis for the addition of these two Defendants, as well as the new allegations contained in the proposed Amended Complaint, came to light during the depositions conducted in this action in November 2020.[4]

In particular, during their depositions in this action, the Defendants gave testimony giving rise to the allegations in the proposed Amended Complaint, including:

(i)    Rosenberg's testimony indicated that virtually all of the services billed to GEICO through South Shore (other than those performed by Rosenberg himself) were performed by independent contractors, rather than employees of the practice. Under well-settled New York law, this fact renders all of these services noncompensable. See 11 N.Y.C.R.R. §65-3.11(a). While the original Complaint included allegations that one of South Shore's "employees", Archer Irby, was an independent contractor, South Shore's owner, Rosenberg, gave testimony indicating that all of South Shore's supposed "employees" were, in fact, independent contractors, and that South Shore's billing had misrepresented that these individuals were legitimately "employees". See Henesy Decl., Exhibit "3", 89:12-14; 113:16-21; 116:18-23. The proposed Amended Complaint adds allegations to that effect. See Henesy Decl., Exhibit "1", ¶¶ 78-85.

---

[4] Transcripts of the Defendants' depositions are attached to the Declaration of Steven T. Henesy (the "Henesy Decl.") in the following manner: (i) Bromberg, Axial, and Action: Exhibit "2"; (ii) Rosenberg and South Shore: Exhibit "3"; and (iii) Lefcort and Lefcort MUA: Exhibit "4".

(ii)    Lefcort's testimony indicated that virtually all of the patients treated through his MUA practice, Lefcort MUA, were actually referred there by his <u>other</u> practice, Bayside, a New York-based practice providing in-office chiropractic, physical therapy, and acupuncture services.[5] <u>See</u> Henesy Decl., Exhibit "4", 75:4-79:24. Lefcort's testimony further indicated that, at the conclusion of the examinations of patients who had been referred from Bayside to Lefcort MUA, Lefcort recommended that those patients return to Bayside for the continued provision of chiropractic, acupuncture, and physical therapy services. <u>See</u> <u>id</u>., 138:3-140:25. Lefcort's testimony indicated that, while he had provided ownership disclosures to patients he referred to a surgery center in which he held an ownership interest, the patients were never specifically informed that Lefcort held an ownership interest in either Bayside or Lefcort MUA beyond an assignment of benefits form. <u>See</u> <u>id</u>., 75:4-81:19. In this context, New York law prohibits chiropractors from referring patients to healthcare practices in which the chiropractors has an ownership interest unless: (a) the ownership interest is disclosed to the patient; and (b) the disclosure informs the patient of his or her "right to utilize a specifically identified alternative healthcare provider if any such alternative is reasonably available". <u>See</u> Public Health Law § 238-d. The proposed Amended Complaint adds allegations that the referrals made or caused to be made by Lefcort, Lefcort MUA, and Bayside between Lefcort MUA and Bayside violated § 238-d, inasmuch as Lefcort, Lefcort MUA, and Bayside did not disclose Lefcort's ownership interest in Lefcort MUA and Bayside, and did not inform the patients of their right to utilize an alternative healthcare provider. <u>See</u> Henesy Decl., Exhibit "1", ¶¶ 86-109. Therefore, Lefcort MUA and Bayside were ineligible to collect no-fault benefits from GEICO. <u>See</u> N.Y.C.R.R. § 65-3.16(a)(12); <u>Fair Price Med. Supply Corp. v. ELRAC Inc.</u>, 12 Misc. 3d 119 (App. Term 2006). The proposed Amended Complaint also adds allegations to the effect that services provided by Lefcort, Yoo, and Bayside prior to and following the unlawful self-referrals to and from Lefcort MUA were medically unnecessary and duplicative of the services provided through Lefcort MUA, and the billing submitted by Lefcort, Yoo and Bayside misrepresented the nature and extent of those services. <u>See</u> Henesy Decl., Exhibit "1', ¶¶ 86-109, 113-250.

(iii)    Relatedly, Lefcort's testimony indicated that, to the extent that Lefcort MUA's patient examinations were billed as "consultations" under CPT code 99243 for patients referred to Lefcort MUA from Bayside, those services were improperly billed. <u>See</u> Henesy Decl., Exhibit "4", 141:2-143:23. The proposed Amended Complaint adds allegations to the effect that these purported "consultations" created the appearance that Lefcort MUA had some legitimate, outside referral sources when, in fact, virtually all of the patients had been caused to self-referred by Lefcort from Bayside to Lefcort MUA. <u>See</u> Henesy Decl., Exhibit "1", ¶¶ 173-179.

---

[5] Notably, in its responses to GEICO's interrogatories in this action, Lefcort MUA indicated that none of its co-Defendants – including Lefcort – had referred patients to Lefcort MUA, despite the fact that virtually all of Lefcort MUA's patients were referred or caused to be referred there from Bayside by Lefcort. A copy of these responses is attached to the Henesy Decl. as Exhibit "5".

(iv)     Bromberg's testimony indicated that there was no functional difference between his practices, Axial and Action. In fact, Bromberg's testimony indicated that the only distinguishing characteristics between Axial and Action were their names, their incorporation dates, and the colors of their checkbooks. See Henesy Decl., Exhibit "2", 62:11-22. Based on this testimony, the proposed Amended Complaint asserts an additional RICO count against Bromberg with Axial and Action pleaded as together constituting an "association-in-fact" enterprise as that term is defined by 18 U.S.C. § 1961(4). See Henesy Decl., Exhibit "1", ¶¶ 9, 527-535.

(v)     Bromberg's testimony also indicated that he was aware as early as September 2014 that Axial and Action were required to be incorporated as professional corporations in New Jersey. In particular, Bromberg's testimony indicated that indicated that he began attempting to incorporate Axial and Action in New Jersey as early as September 2014. See Henesy Decl., Exhibit "2", 142:20-144:6. The proposed Amended Complaint adds allegations to the effect that Bromberg was aware of the requirement for Axial and Action to be incorporated in New Jersey, but nonetheless sought reimbursement from GEICO for services provided by Axial and Action prior to their being so incorporated. See Henesy Decl., Exhibit "1", ¶¶ 334-335.

Moreover, the proposed Amended Complaint adds allegations to the effect that, due to the fraudulent misrepresentations and omissions related to the unlawful and disqualifying activities outlined above, Axial, Action, Bromberg, South Shore, Rosenberg, Lefcort, Yoo, Lefcort MUA, and Bayside obtained arbitral awards of no-fault insurance benefits to which they were not entitled. See Henesy Decl., Exhibit "1", ¶¶ 317-359. While, during discovery, and prior to the Defendants' depositions, GEICO had taken the position in this action that it was foregoing pursuit of payments made to the Defendants pursuant to arbitral awards, the Defendants' deposition testimony revealed further knowing – and, in the context of their eligibility to collect no-fault benefits, dispositive – misrepresentations and omissions in the Defendants' billing to GEICO. These new facts go beyond allegations of a lack of medical necessity, and are disqualifying as a matter of law. Therefore, the proposed Amended Complaint adds allegations to the effect that, to extent that the Defendants recovered at arbitration, those arbitral awards were fraudulently obtained.

The proposed Amended Complaint also simplifies the claims against Axial and Action. In particular, the proposed Amended Complaint specifies that though Axial was separately incorporated in New York and New Jersey, it functioned as a single entity with a single name and tax identification number. The Amended Complaint likewise specifies that though Action was separately incorporated in New York and New Jersey, it too functioned as a single entity with a single name and tax identification number. <u>See</u> Henesy Decl., Exhibit "1", ¶¶ 7-9.[6]

Based on these new facts and allegations, the proposed Amended Complaint asserts causes of action against the Defendants and proposed new Defendants for civil RICO, RICO conspiracy, common law fraud, and unjust enrichment, seeking recovery of approximately $1,900,000.00 it paid the Defendants both voluntarily and pursuant to arbitral awards. In addition, GEICO seeks a declaratory judgment, to the effect that Axial, Action, South Shore, Lefcort MUA, and Bayside have no right to receive payment on pending and unpaid no-fault insurance billing amounting to more than $1,800,000.00.

## <u>ARGUMENT</u>

## I.    <u>THE STANDARDS ON THIS MOTION</u>

"After a Scheduling Order has been entered, motions to amend are subject to Rule 16(b) of Federal Rules of Civil Procedure 'good cause' standard…." <u>Griffin v. Sirva, Inc.</u>, 2018 WL 1175070, at *11 (E.D.N.Y. Mar. 6, 2018). In determining whether good cause has been shown, "the primary consideration is whether the moving party can demonstrate diligence." <u>Kassner v. 2nd Ave. Delicatessen Inc.</u>, 496 F.3d 229, 244 (2d Cir. 2007). Courts also "consider

---

[6] More generally, the proposed Amended Complaint also simplifies the treatment-based allegations against the Defendants. In particular, the proposed Amended Complaint condenses language concerning some of the Defendants' purported healthcare services, and removes a number of "representative examples" concerning allegations that were not contested by the Defendants during the November 2020 depositions.

other relevant factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendants." Id.

Once "good cause" to modify a scheduling order has been established, the analysis shifts to "whether the movant also meets the liberal standards of Rule 15." Point 4 Data Corp. v. Tri–State Surgical Supply & Equipment, Ltd., 2012 WL 2458060, at *5 (E.D.N.Y. 2012).

Rule 15 of the Federal Rules of Civil Procedure provides that when a responsive pleading has been served "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a).

"A motion for leave to amend should be denied only for good reason such as 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" Camoia v. City of New York, 2013 WL 867199, *2 (E.D.N.Y. 2013) (quoting Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008)). "An amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002).

Delay, without prejudice, is an insufficient basis to deny leave to amend. Stone v. Courtyard Mgmt. Co., 2001 WL 395159, at *2 (S.D.N.Y. 2001). Although leave to amend is not automatic, "only undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party ... [or] futility of the amendment will serve to prevent an amendment prior to trial." Care

Environmental Corp. v. M2 Technologies, Inc, No. CV-05-1600, 2006 WL 2265036, at *5 (E.D.N.Y. Aug. 8, 2006)(internal quotations and citation omitted).

While the onus on the party seeking to amend is slight, the burden on the party opposing the motion for leave to amend is significant, in that such a challenge must establish that the amendment would be legally insufficient, frivolous or prejudicial. Fariello v. Campbell, 860 F. Supp. 54, 70 (E.D.N.Y. 1994). In particular, courts have held "amendments are favored," Black Radio Network, Inc. v. NYNEX Corp., 44 F. Supp. 2d 565, 573 (S.D.N.Y. 1999)(quoting Conley v. Gibson, 355 U.S. 41, 48 (1957)), "liberally granted," Sperberg v. Firestone Tire & Rubber Co., 61 F.R.D. 78, 79 (N.D. Ohio 1973), and should be "freely given," Fornan v. Davis, 371 U.S. 178, 182 (1962). The Second Circuit has stated, "amendment should normally be permitted ... [as] refusal to grant leave without justification is inconsistent with the spirit of the Federal Rules." Rachman Bag Co. v. Liberty Mut. Ins. Co., 46 F.3d 230, 234 (2d Cir. 1995) (internal quotations and citations omitted).

## II.    THERE IS GOOD CAUSE TO RE-OPEN THE DEADLINE TO AMEND PLEADINGS

As a threshold matter, there is "good cause" to re-open the Court's original June 8, 2020 deadline to amend pleadings.

Plaintiffs have worked diligently throughout the discovery process in this action, and scheduled the depositions of the Defendants as soon as was practicable – especially considering the coronavirus-related difficulties in proceeding. As set forth in detail above, the bases for the allegations in the proposed Amended Complaint arose from the Defendants' depositions, most of which were conducted in November 2020.

Not only did GEICO learn of the new information outlined above for the first time during the Defendants' depositions, the information actually contradicted previous billing and other

representations made and submitted by the Defendants to GEICO. For example, much of the billing submitted through South Shore to GEICO falsely represented that the billed-for services had been performed by South Shore employees, rather than by independent contractors. It was not until Rosenberg's November 2020 deposition that GEICO discovered that virtually all of these services were performed by independent contractors – and not, as represented in the bills, by employees – and the bills were therefore noncompensable.

Similarly, as set forth above, in their patient examination billing to GEICO, Lefcort and Lefcort MUA, by billing the examinations using a "consultation" code, falsely indicated that the patient had been referred to Lefcort MUA by some outside source. Indeed, and as alleged in the proposed Amended Complaint, the "consultation" reports even falsely indicated that Lefcort would follow up with some outside referring provider following the recommended services. Relatedly, as noted above, in its responses to GEICO's interrogatories in this action, Lefcort MUA indicated that none of its co-Defendants – including Lefcort – had referred patients to Lefcort MUA. See Henesy Decl., Exhibit "5". It was not until Lefcort's November 2020 deposition that GEICO first discovered that virtually all of the patients supposedly examined by Lefcort through Lefcort MUA had actually been caused to be referred to Lefcort MUA by Lefcort and Bayside, and that Lefcort, Lefcort MUA, and Bayside never provided their patients with the ownership and alternative healthcare provider disclosures required under New York law.

Along similar lines, Bromberg's deposition testimony indicated that there was no functional difference between Axial and Action. In fact, Bromberg's testimony that the only differences between Axial and Action were their names, incorporation dates, and the colors of their checkbooks. Bromberg's deposition testimony also indicated, for the first time, that Bromberg was on notice of the requirement to have his practices, Axial and Action, incorporated in New Jersey

in order to provide services there. And, despite the fact that Bromberg's testimony indicated that he was on notice of the incorporation requirements, he, Axial, and Action nonetheless provided and billed for services in New Jersey, and then accepted payment from GEICO for those services.

Against this backdrop, Plaintiffs have more than established their diligence in pursuing the evidence and discovery that gave rise to the allegations in the proposed Amended Complaint. What is more, based on the foregoing, it is clear that Plaintiffs were not in possession of the information giving rise to the proposed Amended Complaint prior to the deadline for amendments. To the contrary, much of the information in GEICO's possession prior to the deadline for amendments was ultimately <u>contradicted</u> by the Defendants' subsequent deposition testimony. Under these circumstances, the Court should grant Plaintiffs' motion to re-open the deadline for amendments. <u>See</u>, <u>e.g.</u>, <u>Weaver v. Warrington</u>, 2018 WL 5253110, at *2 (E.D.N.Y. 2018) (Vitaliano, J.) ("[a] party fails to show good cause when the proposed amendment rests on information that the party knew, or should have known, in advance of the deadline.") (internal quotation omitted); <u>Lickteig v. Cerberus Capital Mgmt., L.P.</u>, 2020 WL 7629876, at *3 (S.D.N.Y. 2020) ("Plaintiff learned of the information on which the proposed amendment is based well after the amendment deadline and he promptly brought filed [sic] this motion once he did. Therefore, Plaintiff has demonstrated that he was diligent in bringing his motion for leave to amend.").

Moreover, and as set forth in more detail below, the Defendants will not be prejudiced by the filing of the proposed Amended Complaint. As such, the Court should grant Plaintiffs' motion and re-open the deadline for amendments.

## III.   THE COURT SHOULD GRANT PLAINTIFFS LEAVE TO FILE THE PROPOSED AMENDED COMPLAINT

Because Plaintiffs have established the requisite "good cause" to re-open the deadline to amend pleadings, because there has been no undue delay, dilatory motive, or bad faith, and because the Defendants will not suffer any prejudice, Plaintiffs' motion should be granted in its entirety.

First, there has been no undue delay. To the contrary, as set forth in detail above, this motion and the proposed Amended Complaint come as the result of diligent efforts of the part of GEICO to obtain relevant discovery (despite the pandemic-related challenges), and – once GEICO obtained that information through the Defendants' depositions – to work diligently to prepare a proposed Amended Complaint. In this context, it cannot be said that Plaintiffs did not act diligently in seeking leave to amend. See, e.g., In re "Agent Orange" Product Liability Litigation, 220 F.R.D. 22, 25 (E.D.N.Y. 2004) (finding delay justified where basis for new allegations came to light during discovery); Topps Co., Inc. v. Cadbury Stani S.A.I.C., 2002 WL 31014833, *2 (S.D.N.Y. 2002) (finding delay reasonable where moving party discovered claim through depositions). Nor can it be said that that Plaintiffs have acted in bad faith in not seeking leave to amend at an earlier date. This would be true even if Plaintiffs had been in possession of the information giving rise to the proposed Amended Complaint earlier in this litigation, which they were not. See, e.g., Dilworth v. Goldberg, 914 F. Supp. 2d 433, 460 (S.D.N.Y. 2012) ("[T]he motion to amend will not be denied by reason of plaintiffs' delay in alleging facts that were previously within their knowledge."); Randolph Foundation v. Duncan, 2002 WL 32862, at *3 (S.D.N.Y. 2002) ("[T]he fact that a party may have had evidence to support a proposed amendment earlier in the litigation does not, by itself, give rise to an inference of bad faith.").

Moreover, while time has passed since the original Complaint was filed, the mere passage of time does not render a delay "undue." Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir.

1993); State Teachers Ret. Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981); Minoli v. Evon, No. CV-95-0544, 1996 WL 288473, at *4 (E.D.N.Y. May 24, 1996). In fact, Courts in the Second Circuit have allowed amendments several years after filing of the original complaint. See, e.g., State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C., 246 F.R.D. 143, 147 (E.D.N.Y. 2007)(two and a half year delay); Fluor Corp., 654 F.2d at 856 (three year delay); Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb, Inc., 734 F. Supp. 1071, 1078 (S.D.N.Y. 1990) (three year delay).

What is more, Courts consider whether defendants' conduct contributed to the passage of time, which is a significant factor here. See, e.g., Gem Global Yield Fund, Ltd. v. Surgilight, Inc., 2006 WL 2389345, at *10 (S.D.N.Y. 2006) (four year delay not bad faith based on negotiations with non-moving party and events of case); Fustok v. Conticommodity Serv., Inc., 103 F.R.D. 601, 604 (S.D.N.Y. 1984) (no undue delay based on magnitude of case and actions of both sides).

Second, even assuming the existence of undue delay, and even assuming that Plaintiffs had no satisfactory explanation for that delay – and disregarding, for a moment, that neither of those factors is present here – the Defendants will not suffer any undue prejudice if the Court grants Plaintiffs leave to amend. For example, the filing of the proposed Amended Complaint would not require the original Defendants in this action to expend any significant amount of additional resources to conduct discovery and prepare for trial beyond what would have already been required. While the proposed Amended Complaint adds additional allegations concerning the original Defendants, those allegations would not significantly alter the scope of fact or expert discovery for the original Defendants – especially considering that the majority of those allegations raise questions of law rather than fact. In any event, "[t]he adverse party's burden of undertaking [additional] discovery, standing alone, does not suffice to warrant denial of a motion to amend a

pleading." United States v. Cont'l Ill. Nat. Bank and Trust Co. of Chi., 889 F.2d 1248, 1255 (2d Cir. 1989). Moreover, "[t]he need for additional motion practice and trial preparation is not sufficient to constitute undue prejudice." Cmty. Ass'n Underwriters of Am., Inc. v. Main Line Fire Prot. Corp., 2020 WL 5089444, at *4 (S.D.N.Y. 2020).

Moreover, the filing of the proposed Amended Complaint will not significantly delay the resolution of this action. Fact discovery remains open and, although Plaintiffs intend to seek an extension of the discovery deadlines, Plaintiffs do not anticipate substantial delays. Fact discovery has been extended on two occasions in this action, and the most recent extension was a joint request "in order to allow for post-deposition discovery or, if necessary, a further rescheduling of the remaining party depositions." See Docket No. 71. Indeed, the deposition of GEICO's corporate representative has not yet been completed, a new date for the continuation of that deposition has not yet been set, the parties have not commenced expert discovery, and no trial date has been set. Under these circumstances, the filing of the proposed Amended Complaint will not significantly delay the resolution of this action. See, e.g., Pall Corp. v. Entegris, Inc., 2007 WL 9709768, at *1 (E.D.N.Y. 2007) (granting motion to amend where "fact discovery was not complete, expert discovery had not yet begun, and no summary judgment motion had been filed."); cf. Ansam Associates v. Cola Petroleum, Ltd., 760 F.2d 442, 446 (2d Cir. 1985) (denying motion to amend denied where discovery had closed and non-movant had already filed motion for summary judgment).

Finally, the filing of the proposed Amended Complaint will not be futile. To the contrary, and as the Court will note, the proposed Amended Complaint contains an abundance of detail regarding the fraudulent scheme executed by the original Defendants and proposed new Defendants. Simply put, Plaintiffs respectfully submit that the proposed Amended Complaint is

more than sufficiently pleaded pursuant to Fed. R. Civ. P. 8 and 9(b), and would survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

In fact, Courts in this District have repeatedly held that substantially similar anti-insurance fraud complaints asserting, in many cases, identical causes of action, were sufficiently pleaded pursuant to Rules 8 and 9(b). See, e.g., State Farm Mut. Auto. Ins. Co. v. Rabiner, 2010 U.S. Dist. LEXIS 119961 (E.D.N.Y. 2010); State Farm Mut. Auto. Ins. Co. v. Grafman, 655 F. Supp. 2d 212 (E.D.N.Y. 2009); Allstate Ins. Co. v. Valley Physical Med. & Rehab., P.C., 2009 U.S. Dist. LEXIS 91291 (E.D.N.Y. 2009); Allstate Ins. Co. v. Halima, 2009 U.S. Dist. LEXIS 22443, *6 (E.D.N.Y. 2009); State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C., et al., 2008 U.S. Dist. LEXIS 71156 (E.D.N.Y. 2008); State Farm Mut. Auto. Ins. Co. v. James M. Liguori, M.D., P.C., 589 F. Supp. 2d 221, 238 (E.D.N.Y. 2008); AIU Ins. Co. v. Olmecs Med. Supply, Inc., 2005 U.S. Dist. LEXIS 29666, at *40 (E.D.N.Y. 2005).

More specifically, GEICO's proposed allegations to the effect that the referral scheme executed between and among Lefcort MUA, Bayside, and Lefcort violated of Public Health Law § 238-d, and that those violations rendered the providers ineligible to collect no-fault benefits, are far from futile. See Fair Price Med. Supply Corp. v. ELRAC Inc., 12 Misc. 3d 119 (App. Term 2006) (finding that § 238-d violations constitute a defense to a no-fault insurance claim and that failure to raise that defense initially did not result in its waiver, and noting that "[i]ndeed, if a health care provider makes a prohibited referral, the health care provider could be subject to civil and criminal penalties.") (citing Public Health Law § 12, 12-b); see also Gov't Employees Ins. Co. v. Mayzenberg, 2018 WL 6031156, at *2 (E.D.N.Y. 2018) (noting that participation in unlawful referral scheme prohibited by disciplinary rule governing licensed healthcare providers, 8

N.Y.C.R.R. § 29.1, would disqualify defendants from receiving no-fault benefits); 10 N.Y.C.R.R. § 34-1.5.

Moreover, Plaintiffs' proposed allegations concerning the arbitral awards fraudulently obtained by the Defendants are not precluded, nor are they subject to a defense of res judicata. Indeed, as noted in the proposed Amended Complaint, the Defendants' arbitrations proceeded in piecemeal fashion, typically concerned an amount in controversy of only a few thousand dollars, and GEICO was left essentially defenseless and without an opportunity to fully and fairly litigate those underlying claims. See Henesy Decl., Exhibit "1", ¶¶ 325-329; see also Allstate Co. Mun. 751 F.3d 94, 99 (2d Cir. 2014) (noting that, in the context of no-fault arbitrations, "discovery is limited or non-existent and the insurance companies are essentially defenseless."). In this context, the Second Circuit has noted that "[e]ven if the defendants obtain other No-Fault reimbursements in…arbitrations while this case is pending, the plaintiffs are free to recover those payments should they prevail on their RICO claim." Allstate Ins. Co. v. Harvey Family Chiropractic, 677 F. App'x 716, 718 (2d Cir. 2017) (summary order).

In any event, res judicata is an affirmative defense, and is typically not resolvable on a motion pursuant to Fed. R. Civ. P. 12(b)(6). See, e.g., Magi XXI, Inc. v. Stato Della Cit%22a Del Vaticano, 22 F. Supp. 3d 195, 201 (E.D.N.Y. 2014) ("res judicata and collateral estoppel are ordinarily pled as affirmative defenses and thus neither will typically serve as the basis for a pre-answer motion to dismiss."). Indeed, a res judicata defense is a fact-specific inquiry that requires a determination of whether the initial proceeding provided a "full and fair opportunity" to litigate the claim at issue, and "consideration of  the realities of the prior litigation, including the context and other circumstances which may have had the practical effect of discouraging or deterring a party from fully litigating the determination which is now asserted against him". Ryan v. New York Tel. Co., 62 N.Y.2d 494, 501,

467 N.E.2d 487, 490–91 (1984) (internal quotations and citations omitted). "Among the specific factors to be considered are the nature of the forum and the importance of the claim in the prior litigation, the incentive and initiative to litigate and the actual extent of litigation, the competence and expertise of counsel, the availability of new evidence, the differences in the applicable law and the foreseeability of future litigation." Id.

Therefore, even to the extent that the Defendants raise estoppel-based defenses in response to this motion, because they would not be resolvable on a 12(b)(6) motion, those arguments would not stand as a bar to amendment. See, e.g., Dougherty, supra ("An amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)."); see also Associated Mortg. Bankers, Inc. v. Calcon Mut. Mortg. LLC, 159 F.Supp.3d 324, 331 (E.D.N.Y. 2016) ("A court must accept all allegations in the proposed amended complaint as true and draw all reasonable inferences in the plaintiff's favor") (quoting Pension Committee of University of Montreal Pension Plan v. Banc of America Securities LLC, 568 F.3d 374, 381 (2d Cir. 2009)).

Against this backdrop, amendment would not be futile and, therefore, the Court should grant Plaintiffs' Motion for Leave to file the proposed Amended Complaint.

## IV.    THE ADDITION OF BAYSIDE AND YOO AS A NEW DEFENDANTS DOES NOT ALTER THE RULE 15 ANALYSIS

Fed. R. Civ. P. 21 governs specific instances where an amendment seeks to add parties and "it is generally accepted ... that no material difference exists between the standards articulated by Rules 15(a) and 21, and, as such, where parties satisfy the requirements under [Rule 15(a)] for leave to amend, they will generally be permitted to add parties under [Rule 21]." Sanrio Co., Ltd. v. Epic Trading, Inc., No. 2004-5428, 2005 WL 1705746, at *1 (E.D.N.Y. 2005)(internal quotations and citation omitted). Put another way, "[i]n deciding whether to permit the addition of defendants, courts apply the same standard of liberality afforded to motions to amend pleadings

under Rule 15." <u>Allstate Ins. Co. v. Elzanaty</u>, 916 F. Supp. 2d 273, 302 (E.D.N.Y. 2013)(internal quotations and citation omitted).

In the present case, while the Amended Complaint adds Bayside and Yoo as new parties, its allegations also indicate that Bayside and Yoo were inextricably intertwined with Lefcort and Lefcort MUA – both original Defendants in this action – by virtue of the unlawful referral scheme outlined in the proposed Amended Complaint, and amendment is therefore proper. <u>See</u>, <u>e.g.</u>, <u>In re Crazy Eddie Sec. Litig.</u>, 792 F. Supp. 197, 205 (E.D.N.Y. 1992) (leave granted where plaintiffs learned new information during discovery and defendant had notice of the facts because they related to claims already asserted); <u>see also</u> <u>State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C.</u>, 246 F.R.D. 143, 149 (E.D.N.Y. 2007) (permitting insurer to amend complaint to add new defendants and allege that professional corporations were fraudulently incorporated, where "allowing Plaintiff to add claims for fraudulent incorporation would not significantly delay the resolution of this matter. Here, the new claims are merely variations on the original theme . . ., arising from the same set of operative facts as the original complaint. … The fraudulent incorporation claims will not dramatically change the nature of the case because the issue of fraudulent incorporation is intertwined with Plaintiff's RICO conspiracy and common law fraud claims. … Indeed, all claims at issue share a common theme: the intent of Defendants to exploit the No-Fault laws to the detriment of Plaintiff.")(Internal quotations and citation omitted).

## **CONCLUSION**

For the reasons stated herein, the Court should grant Plaintiffs' motion in its entirety.

Dated:    Uniondale, New York
          February 1, 2021

                                  Respectfully submitted,

                                  RIVKIN RADLER LLP


                                  By:   /s/ *Steven T. Henesy*
                                        Barry I. Levy
                                        Max Gershenoff
                                        Steven T. Henesy
                                        Yonatan Bernstein
                                  926 RXR Plaza
                                  Uniondale, New York  11556
                                  (516) 357-3000

                                  *Counsel for Plaintiffs, Government Employees*
                                  *Insurance Company, GEICO Indemnity Company,*
                                  *GEICO General Insurance Company, and GEICO*
                                  *Casualty Company*